UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN T. TURVEY,

                  Plaintiff,                  CIVIL ACTION NO. 12-12388

                v.                        DISTRICT JUDGE NANCY G. EDMUNDS

                                      MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 15)

      Plaintiff Sean T. Turvey challenges the Commissioner of Social Security's ("Defendant")

final denial of his benefits application.  Cross motions for summary judgment are pending (Dkt.

Nos. 9, 15).  Judge Nancy G. Edmunds referred the motions to this Magistrate Judge for a Report

and Recommendation (Dkt. No. 3).

## I.      RECOMMENDATION

      Because substantial evidence supports the Administrate Law Judge's ("ALJ") decision,

this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be

**DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's

findings be **AFFIRMED**.

## II.      DISCUSSION

###       *A.*      *Framework for Disability Determinations*

      Under the Social Security Act, (the "Act") Disability Insurance Benefits and

Supplemental Security Income are available only for those who have a "disability."  *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    *Standard of Review***

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See*

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can

consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does

"not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*,

499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing

court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   *Administrative Proceedings*

Plaintiff applied for supplemental security income and disability insurance benefits on

June 17, 2009, alleging he became disabled on February 28, 2002 (Tr. 34).  He later amended his

disability onset date to May 15, 2008 (Tr. 17).  After the Commissioner initially denied

Plaintiff's application, he appeared with counsel for a video hearing before ALJ David K. Gatto,

who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled

(Tr. 34-47).  Plaintiff requested an Appeals Council review (Tr. 7).  On April 5, 2012, the ALJ's

decision became the final decision of the Commissioner when the Appeals Council declined

further review (Tr. 1-3).

### B.   *ALJ Findings*

Plaintiff was 24 years old on his initial disability onset date in 2002 (Tr. 45).  He has a

ninth-grade education and past relevant work as a support manager, surgical technician and sales

manager, and forklift operator (Tr. 17, 45).  The ALJ applied the five-step disability analysis to

Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity

since his initial disability onset date in 2002 (Tr. 36).

At step two, the ALJ found that Plaintiff had the following "severe" impairments:

hypertension, degenerative joint disease (of the left elbow and left knee), major depression with

psychotic features, borderline personality disorder and social phobia, fibromyalgia, obstructive

sleep apnea, and obesity (Tr. 36).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically

equaled one of the listings in the regulations (Tr. 37).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional

Capacity ("RFC") to perform:

> unskilled light work . . . which involves lifting no more than 20 pounds
> occasionally and 10 pounds frequently except [Plaintiff] can occasionally climb[]
> ramps or stairs, kneel, and crouch.  He should never crawl or climb ladders, ropes,
> or scaffolds due to obesity. [Plaintiff] can frequently balance.  Finally, [Plaintiff]
> has mental limitations (social interaction and adaptation), namely he can only
> have brief and superficial contact with the general public, co-workers, and
> supervisors.  He does not have the ability to adapt to rapid or frequent changes in
> the work routine due to decreased stress tolerance.

(Tr. 39) (emphasis in original) (footnotes omitted).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a

support manager, surgical technician and sales manager, or forklift operator (Tr. 45).

At step five, the ALJ found Plaintiff was not disabled, because there are a significant

number of jobs available in the national economy that Plaintiff could perform (Tr. 46).

### C.    *Administrative Record*

#### 1.    **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that his fibromyalgia makes him tired and his bipolar disorder makes

him aggressive and angry (Tr. 21, 23).  According to Plaintiff, he hears voices, suffers from

paranoia, and has daily panic attacks (Tr. 23).  Plaintiff's mother watches his children when his

wife has to work, because he does not feel it is safe for him to be alone with them (Tr. 19, 23).

Plaintiff also uses a continuous positive airway pressure machine to sleep (Tr. 24).[1] He testified that his medication causes weight gain, drowsiness and confusion (Tr. 21-22).

Plaintiff generally watches television, but he can only sit for approximately one hour; he can only stand for 10 minutes (Tr. 18, 21). Plaintiff does not leave his house for any reason (Tr. 23).

### 2.    Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a younger individual with minimal education and Plaintiff's work history. The individual has hypertension, fibromyalgia, obesity, an affective disorder, an anxiety disorder, degenerative joint disease of the left elbow and left knee, and a personality disorder. In addition, the individual received treatment for a substance abuse disorder and for sleep apnea. He is limited to light, unskilled work; can occasionally lift up to 20 pounds; frequently lift 10 pounds or less and balance; occasionally climb stairs and ramps; cannot climb ladders, ropes or scaffolds; cannot crawl; and can occasionally stoop, kneel and crouch. Finally, the individual can only have brief and superficial contact with others in the workplace and no rapid or frequent changes in the work routine (Tr. 24-25). The VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could perform work as a hand packer, inspector or assembler (Tr. 25-26).

In a second hypothetical, the ALJ asked the VE to assume that the individual is limited to sedentary, unskilled work and can: (1) occasionally lift 10 pounds; (2) frequently lift less than 10 pounds; (3) stand and walk up to two hours in an eight-hour workday; and (4) sit up to eight hours. In addition, the individual can only have brief and superficial contact with others in the

---

[1]"Continuous positive airway pressure therapy (CPAP) uses a machine to help a person who has obstructive sleep apnea (OSA) breathe more easily during sleep." *See* http://www.webmd.com/sleep-disorders/sleep-apnea/continuous-positive-airway-pressure-cpap-for-obstructive-sleep-apnea (last visited May 29, 2013).

workplace and no rapid or frequent changes in the work routine (Tr. 26).  The VE testified that

such an individual could perform work as a sorter, visual inspector or video surveillance monitor

(Tr. 26).

   The individual would be precluded from work, if he had to be absent more than two days

per month (Tr. 26).

   ### D.    *Plaintiff's Claims of Error*

   Plaintiff's brief contains two broad arguments: (1) the ALJ erred in his credibility

determination; and (2) the ALJ based his decision on a selective reading of the record.[2]  Both

arguments fail.

   ### 1.    **Plaintiff's Credibility**

   Plaintiff contends that the ALJ's decision does not comport with SSR 96-7p, which

provides:

> [t]he determination or decision must contain specific reasons for the finding on
> credibility, supported by the evidence in the case record, and must be sufficiently
> specific to make clear to the individual and to any subsequent reviewers the
> weight the adjudicator gave to the individual's statements and the reasons for that
> weight.

Specifically, Plaintiff says the ALJ did not credit his testimony about his pain, anxiety and

depression.

   The record demonstrates that the ALJ stated specific reasons, supported by evidence in

the record, for the weight given to Plaintiff's testimony.  The ALJ supported his conclusion that

Plaintiff's testimony was not fully credible using the medical evidence (Tr. 40-42).  For example,

with regard to Plaintiff's pain, the ALJ stated that Plaintiff has osteoarthritis of the left elbow

and knee: he has trouble straightening the left elbow, and swelling and snapping in his left knee.

---

[2]Defendant raises additional arguments that the Plaintiff did not articulate and that this
Magistrate Judge need not address.

2:12-cv-12388-NGE-MAR   Doc # 16   Filed 05/31/13   Pg 8 of 13   Pg ID 697

However, Plaintiff could bend and rotate his left elbow, and a physical examination showed Plaintiff's right elbow, hip joints, knee joints and ankle joint movements were all within normal range; Plaintiff's hands, fingers and wrist movements were also within normal range (Tr. 40-41). The ALJ further stated that Plaintiff was diagnosed with fibromyalgia and had multiple tender points (places on the body where slight pressure causes pain) in September of 2010 as well as fatigue and sleep disturbance. But, Plaintiff's fibromyalgia was being treated with medication to help reduce the pain and improve sleep (Tr. 41). With regard to Plaintiff's mental impairments, the ALJ stated that Plaintiff was diagnosed with major depressive disorder and borderline personality disorder, but he was seeing a psychiatrist monthly and was taking psychotropic medications that were relatively effective in controlling Plaintiff's symptoms (Tr. 42). A psychological examination performed in October of 2009 revealed that Plaintiff could understand, remember and follow through on simple and complex directions and tasks (Tr. 42).

In addition to the objective medical evidence, the ALJ analyzed the applicable factors delineated in the regulations. In making his credibility determination, the ALJ considered Plaintiff's testimony, which included Plaintiff's daily activities; the location, duration, frequency, and intensity of Plaintiff's pain; and the type of medication Plaintiff takes and its side effects (or lack thereof) (Tr. 43-44). For example, Plaintiff successfully completed a truck-driving course in 2008, and the medical records reveal that Plaintiff does not have any side effects from his medication (Tr. 43-44).

Plaintiff does not specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from his pain or mental impairments. For example, Plaintiff has not explained how his joint pain precludes him from lifting up to 20 pounds, climbing ramps or stairs, kneeling, crouching and balancing; or how his

-8-

mental impairments (e.g., anxiety, depression, paranoia, loss of interest, social isolation, panic attacks) preclude him from having only brief and superficial contact with others.

Furthermore, this Court does not make its own credibility determinations.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x. 521, 528 (6th Cir. 2006).  The Court cannot substitute its own credibility determination for the ALJ's.  The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard.  "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ provided a detailed discussion of his reasons for finding that Plaintiff's subjective complaints were not fully credible.  Simply put, the ALJ's credibility determination is supported by substantial evidence.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v. Astrue*, 263 Fed. App'x 469, 475-76 (6th Cir. 2008).

## 2.    Dr. Moises Alviar's Examination Report

On October 3, 2009, Dr. Moises Alviar completed an internal medicine report for the Social Security Administration.  A physical examination revealed that Plaintiff's cervical spine, lumbar spine, shoulders, right elbow, knees, ankles and hips were all within the normal range of motion; Plaintiff's hands and fingers were within the normal range of motion in both flexion and extension (Tr. 438-439).  Plaintiff could sit, stand, bend, stoop, open a door, squat and rise from a squatted position, get on and off the examining table, walk on his heels and toes, and tandem walk.  Plaintiff's gait was stable and within normal limits.  Plaintiff did have slightly decreased joint movement in his left elbow on extension, and there was some crepitus and snapping of the joint in his left knee (Tr. 436-437, 440-441).  Dr. Alviar concluded that Plaintiff could only work a few hours in an eight-hour workday with no limitations in walking; some pushing, pulling and lifting more than 10 pounds; and Plaintiff's ability to climb ropes, ladders and scaffolds depends on his joint pain (Tr. 437).

Plaintiff argues that the ALJ substituted his opinion for that of the medical examiner with regard to Dr. Alviar's conclusion when the ALJ stated:  "[w]hile Dr. Alviar suggests [Plaintiff] may be limited to working less than an [eight] hour day, the physical exam findings are not consistent with such limitation.  Therefore, the undersigned gives no weight to this aspect of Dr. Alviar's examination report" (Tr. 42).  According to Plaintiff, the ALJ failed to consider Dr. Alviar's conclusion in connection with the medical evidence supporting Plaintiff's complaints of anxiety, panic attacks, effuse joint pain, trouble sleeping, depression and fibromyalgia. Plaintiff's argument is misplaced.

The Social Security Rules provide that an individual must have the RFC to perform sustained work eight hours a day for five days a week, or an equivalent work schedule.  SSR 96-9p.  Dr. Alviar's conclusion that Plaintiff could only work a few hours per day equates to a finding that Plaintiff cannot perform sustained work and, is therefore disabled.  But, Dr. Alviar

cannot make this finding – disability is an issue reserved to the Commissioner.  *See* 20 C.F.R. §

404.1527(c)(6)(d)(1):

> We are responsible for making the determination or decision about whether you
> meet the statutory definition of disability.  In so doing, we review all of the
> medical findings and other evidence that support a medical source's statement
> that you are disabled.  A statement by a medical source that you are "disabled" or
> "unable to work" does not mean that we will determine that you are disabled.

In addition, the ALJ appropriately rejected Dr. Alviar's conclusion as being inconsistent

with his physical examination findings – which were essentially unremarkable – and with the

medical evidence regarding Plaintiff's physical and mental limitations.  On October 6, 2009, Dr.

Sharon Ridella-Mehlos stated that "[Plaintiff] has the ability to understand, remember and follow

through on simple and complex directions and tasks.  He is capable of making job-related

decisions.  He would work best in situations in which he does not need to deal with others" (Tr.

448).  Dr. Charles Edmonds determined that "[Plaintiff's] statements concerning limitation and

functioning . . . [were] credible because [Plaintiff] [did not] state any physical limitations in his

functioning" (Tr. 459).  And, Dr. Daniel Blake concluded that: (1) "while [Plaintiff] has serious

mental/emotional problems[,] he is not so severely limited as to preclude simple work activity";

(2) "[Plaintiff's] cognitive skills [are] not grossly impaired"; (3) "[Plaintiff's activities of daily

living are] limited but not to [the] point indicative of [the] inability to perform simple work

activity"; and (4) "[Plaintiff's] mental functions [are] sufficient for sustained simple work

activity" (Tr. 477).  *See Seeton v. Comm'r of Soc. Sec.*, 2012 WL 3500445 at *10 (N.D. Ohio

Aug. 14, 2012) (finding the doctor's restrictions were more severe than his own examinations

and more extreme than the medical evidence supports).

-11-

Finally, the ALJ's RFC determination is consistent with Dr. Alviar's restrictions and the objective medical evidence: the ALJ limited Plaintiff to unskilled,[3] light[4] work with: (1) lifting no more than 20 pounds *occasionally*[5]; (2) no climbing of ladders, ropes, or scaffolds; and (3) only brief and superficial contact with the general public, co-workers, and supervisors.

## IV.   CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the

_____

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

[4] Light work involves *some* pushing and pulling.  20 C.F.R. § 404.1567(b).

[5] "'Occasionally' means occurring from very little up to one-third of the time."  SSR 83-10.

objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  May 31, 2013

### *Certificate of Service*

   *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, May 31, 2013, by electronic and/or ordinary mail.*

s/Eddrey Butts
*Case Manager for Magistrate Judge Mark A. Randon*